# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-925V

| | |
|---|---|
| JAY M. BURROWS,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br><br>Filed: August 5, 2025 |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY,* for Petitioner.

*Mary Novakovic, U.S. Department of Justice, Washington, DC,* for Respondent.

### DISMISSAL DECISION[1]

On June 20, 2023, Jay M. Burrows filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a right-sided Table shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to him on December 31, 2020.[3] Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Based on a review of the evidence in this case, I find that Petitioner has failed to preponderantly demonstrate a critical SIRVA element: that the onset of his shoulder injury

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] In the alternative, Petitioner alleges that his flu vaccine was the cause-in-fact of his shoulder injury. Pet. at 5.

occurred within the Table's 48-hour window. And because the same facts would support no other kind of claim, the petition is appropriately dismissed.

I.     **Relevant Procedural History and the Parties' Arguments**

Respondent filed his Rule 4(c) Report in defense of this claim on April 5, 2024, arguing that the medical records do not support the conclusion that the onset of Petitioner's pain occurred within 48 hours of vaccination. ECF No. 15 at 7-9. Petitioner in response filed a Motion for Finding of Fact on May 1, 2024, arguing that he can establish proper onset. ECF No. 16 at 7. Respondent filed his Response[4] to Petitioner's Motion on June 28, 2024, maintaining his previous arguments[5] and adding that Petitioner's Motion "relies heavily on personal declarations, highlights records generated several months or years after the vaccination at issue, and attempts to explain away the lack of any documented symptoms in the contemporaneous records." ECF No. 20 at 1. Petitioner filed a Reply on July 10, 2024, stating that "there is no outstanding evidence that would impact the determination of onset" and further addressing Respondent's arguments. ECF No. 21. The onset dispute is now ripe for consideration.

---

[4] Prior to filing his Response to Petitioner's Motion, Respondent filed a Motion to Suspend the Response Deadline. ECF No. 17. In support of his request, Respondent argued Petitioner's Motion was premature, as Respondent requested (but Petitioner had not filed) additional records in his Rule 4(c) report, including text messages between Petitioner and his PCP "that are potentially relevant to [P]etitioner's Vaccine Act Claim." *Id.* at 1. Specifically, Respondent requested "all messages relating to the vaccination or [P]etitioner's alleged injury" and for "clarification on whether [P]etitioner was the recipient of the text message in Exhibit 5." Respondent's Report at 5, n.1. Petitioner filed a Response to Respondent's Motion to Suspend, stating that he "informed Respondent that the only relevant message was from Dr. Huizenga on August 12, 2021[,] and is filed at Exhibit 5[.]" ECF No. 18. Petitioner further informed Respondent that Petitioner was the recipient of that message, Dr. Huizenga corroborated the message contents in Exhibit 9, there are no additional messages related to Petitioner's vaccination, and "there is no additional information responsive to Respondent's request." *Id.* In light of Petitioner's representations that no additional records exist, the assigned OSM staff attorney, acting on my behalf, contacted the parties via informal email communication, stating that the record appears sufficient to make a determination as to onset. The assigned OSM staff attorney confirmed that an affidavit regarding the representations made in Petitioner's Response to the Motion to Suspend was not required, and I ordered a substantive Response from Respondent. *See* ECF No. 19; *see also* 42 U.S.C. § 300aa-11(c)(3) (requiring an affidavit if a petitioner is contending that outstanding records exist but are ultimately unavailable and thus explaining the records' unavailability).

[5] In addition to his arguments regarding Table onset, Respondent also argued that Petitioner cannot establish the Vaccine Act's statutory severity requirement, as his "first medical visit for his right shoulder was almost one year after vaccination on December 14, 2021." Response at 3, ECF No. 20 (citing Ex. 4 at 182; 42 U.S.C. § 300aa-11(c)(1)(D)(i)). Respondent also argued Petitioner has failed to establish a causation-in-fact shoulder injury claim. *Id.* at 9-10.

## II.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1).

A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i)   No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii)  Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv)  No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3.

If, however, a petitioner suffered an injury that either is not listed in the Table or did not occur within the prescribed time frame, he must prove that the administered vaccine caused his injury to receive Program compensation. § 11(c)(1)(C)(ii) and (iii). In such circumstances, petitioner asserts a "non-Table or [an] off-Table" claim and to prevail, petitioner must prove his claim by preponderant evidence. § 13(a)(1)(A).

The Federal Circuit has indicated that a petitioner "must show 'a medical theory causally connecting the vaccination and the injury' to establish that the vaccine was a substantial factor in bringing about the injury." *Shyface v. Sec'y of Health & Hum. Servs.,* 165 F.3d 1344, 1352-53 (Fed. Cir. 1999) (*quoting Grant v. Sec'y of Health & Hum. Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992)). The Federal Circuit added that "[t]here must be a 'logical sequence of cause and effect showing that the vaccination was the reason for the injury.'" *Id.* The Federal Circuit subsequently reiterated these requirements in a three-pronged test set forth in *Althen v. Sec'y of Health & Hum. Servs.,* 418 F.3d 1274, 1278

(Fed. Cir. 2005). Under this test, a petitioner is required to show by preponderant evidence that the vaccination brought about her injury by providing:

> (1) a medical theory causally connecting the vaccination and the injury;
>
> (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and
>
> (3) a showing of a proximate temporal relationship between vaccination and injury.

All three prongs of *Althen* must be satisfied. *Id.* Circumstantial evidence may be considered, and close calls regarding causation must be resolved in favor of the petitioner. *Id*. at 1280.

For both Table and non-Table claims, a special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

The Court has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

4

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

Indeed, a special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III. Contemporaneous Medical Records

I make this finding after a complete review of the record, which includes all medical records, affidavits, and additional evidence filed:[6]

- Petitioner received the subject flu vaccine in his right deltoid on December 31, 2020. Ex. 2 at 1; Ex. 4 at 82.

- Petitioner thereafter had four visits with his orthopedist to receive steroid injections for pre-existing right hip pain – on March 2, June 3, August 24, and November 23, 2021 (nearly eleven months post-vaccination). Ex. 6 at

---

[6] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

26-36 (reverse order). These medical records do not contain reports of right shoulder pain at *any* of these visits.[7]

- On September 13, 2021, Petitioner received a monoclonal infusion treatment for a COVID-19 infection. Ex. 4 at 161; Ex. 13 at 93. Petitioner likewise did not report right shoulder complaints at that time.

- Nearly one year post vaccination, on December 14, 2021, Petitioner's primary care provider ("PCP") ordered him to undergo an x-ray of the right shoulder. Ex. 4 at 182. The x-ray showed "mild degenerative changes." *Id.* at 183. Notably, the filed medical records do not contain a visit with Petitioner's PCP *before* this date (to prompt an x-ray), and the records from this date do not contain *any* visit notes, subjective history/complaints, and/or examination findings. *See generally id.*

- On December 23, 2021, Petitioner saw his PCP again, now for his annual wellness visit. Ex. 4 at 88. For the first time in any medical records, Petitioner reported right shoulder pain "since his flu shot on 12/31/2020[.]" *Id.* The PCP wrote that Petitioner "really has gotten gradually and gradually worse and has limited [range of motion ("ROM")]." *Id.* The PCP also noted that Petitioner "has been using NSAIDs without improvement and we gave him an [home exercise program ("HEP")] about 6 weeks ago[8] and he is not improved." *Id.* at 88-89. There are no contemporaneous medical records corroborating the PCP's statement that he gave Petitioner an HEP six weeks prior to this visit.

- A physical examination performed during this visit showed limited ROM of the right shoulder, and the PCP assessed Petitioner with "right shoulder pain, unspecified chronicity." Ex. 4 at 92. An MRI was also ordered and later performed in April 2022. *Id.* at 93, 99-100, 189-90. It showed moderate tendinitis of the subscapularis, supraspinatus, and infraspinatus tendons with partial undersurface tears of the tendons, and arthritis in the AC joint. *Id.* at 189; Ex. 6 at 16.

---

[7] Petitioner had another visit with this orthopedist for hip pain on February 22, 2022, and the visit notes do not contain complaints regarding the right shoulder. Ex. 6 at 21-23. The first entry reflecting right shoulder complaints to this orthopedist occurred on April 26, 2022, and Petitioner was referred to another orthopedist in the same practice, whom he saw in July 2022. *Id.* at 52, 94.

[8] Six weeks prior to this visit was around November 11, 2021 – approximately eleven months post vaccination.

6

- Petitioner saw a new orthopedist for his right shoulder pain on July 21, 2022. Ex. 6 at 14. Petitioner stated at this time that "he got the flu shot on 12/2020 and the right shoulder has been progressively painful since then." *Id.* Petitioner explained that he "uses this arm to perform his work, such as driving a tractor, which made the shoulder worse." *Id.* The orthopedist felt that Petitioner's shoulder was "certainly irritated from that vaccine," and that he had a "little neck issue superimposed causing numbness down the arm." *Id.* at 16.

- The next month (on August 9, 2022), Petitioner began physical therapy ("PT") for his right shoulder. Ex. 7 at 19. The date of onset was listed as "12/31/2020." *Id.* Petitioner reported that "he had a flu shot on 12/31/2020 and had pain in his right shoulder afterward." *Id.* He also reported a "gradual progression of pain with limited motion since." *Id.*

- On October 10, 2022, Petitioner returned to his orthopedist (with whom he previously sought care in July 2022). Ex. 6 at 8. Petitioner stated that his right shoulder "has been progressively painful since getting a flu shot" and that he "had no pain since 12/2020." *Id.*

- No other contemporaneous medical records bearing on the onset of Petitioner's injury have been filed.

IV. **Affidavits and Other Documentation**

- In his own affidavit (drafted in June 2023), Petitioner attested that he experienced right shoulder pain "immediately after receiving the flu vaccine." Ex. 3 ¶ 5. Petitioner explained that "[t]he pain persisted and gradually worsened, and [he] had limited mobility in [his] shoulder." *Id.* He noted he is a farmer and thus "had difficulty performing work duties, such as driving a tractor, which made the pain worse." *Id.* He thus "took hydrocodone prescribed for hip pain, and modified [his] activities[.]" *Id.* He also noted, however, that his pain was "manageable initially because it was winter and off season for [his] work, so [he] did not use [his] right arm/shoulder as much." *Id.* ¶ 6.

- Petitioner further attested that "[a]pproximately one week after the vaccination," he called his PCP to report his persistent pain and limited mobility. Ex. 3 ¶ 6. Petitioner contended that he was told to "do some stretching exercises and give it time to heal on its own." *Id.* He thereafter "attempted to manage the pain with hydrocodone" which was "masking the

7

pain[.]" *Id.* "Over the next several months," he "remained in personal contact with [his PCP] regarding [his] right shoulder condition." *Id.* ¶ 7. When he returned to his farming duties in May 2021, his symptoms "prevented [him] effectively doing [his] work[;]" he thus "messaged [his PCP] on August 12, 2021," and he advised Petitioner of the VICP. *Id.*

- Petitioner also explained that he did not seek in person care after his communication with his PCP in August 2021 because he "was afraid of getting COVID-19, as [he] already [had] breathing issues." Ex. 3 ¶ 8. Petitioner attested that while he did see his orthopedist for hip issues, those "visits were quick in-and-out visits" to receive steroid injections, so he did not mention right shoulder complaints. *Id.* According to Petitioner, he mentioned right shoulder issues to this orthopedist, who then recommended further treatment with a colleague. *Id.*

- Petitioner attested to calling his PCP again after he "somewhat recovered" from COVID (thus after September 2021), and receiving at-home shoulder exercises, which he did daily leading up to his December 2021 visit, but without improvement. Ex. 3 ¶ 9.

- Petitioner's wife submitted an affidavit on his behalf (authored in June 2023). Ex. 10. She attested that "[a]pproximately two days" after Petitioner's vaccination, he told her that "he was still having pain in his upper arm around the site of injection." *Id.* ¶ 5. "Over the next several months" his pain "persisted and worsened." *Id.* ¶ 6. She noted that Petitioner was "in contact with his PCP . . . who gave him some stretching exercises and told him to give it time to heal on its own." *Id.*

- Additionally, Petitioner provided a copy of a text message from his PCP that appears to have been sent on August 12, 2021. Ex. 5. The full text entry appears below:



- This August 12th message appears to be unrelated to both the preceding and proceeding text messages, and there does not appear to be any other messages related to Petitioner's right shoulder between Petitioner and his PCP. *See generally* Ex. 5. Despite the third-person reference to "Jay's shot," Petitioner has argued that he was the recipient of this text message. ECF No. 18 at 1.

- Petitioner's PCP has provided a letter in support of Petitioner's claim (dated June 5, 2023). Ex. 9. That letter states that "approximately 1 week later" following the December 31, 2020 flu vaccine, Petitioner contacted him "by personal phone . . . complaining of persistent shoulder pain and loss of [ROM] since his injection." *Id.* at 2. According to the PCP, Petitioner "attempted to just deal with the pain and as it was winter and off season, he was able to cope with the pain due to use of pain medications (prescribed for chronic back and hip pain)." *Id.* He continued that "in May 2021 he began outdoor work and now had a loss of ROM that prevented him from being able to perform his full duties." *Id.* The PCP further stated that he and Petitioner spoke again "by private communication" on August 12th, at which time he informed Petitioner "of the VAERS program as [he] felt that [Petitioner's] issues over the last 8 months were directly related to his vaccination of Dec [sic] 2020." *Id.*

## V.   Finding of Fact Regarding Table Onset

A petitioner alleging a SIRVA Table claim must show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B) and 3(c)(10)(ii) (QAI criteria)).

There are a number of intertwined issues that, viewed in their totality, do not support a Table onset finding. First, the contemporaneous medical records show there was nearly a *one-year* gap between Petitioner's vaccination and his first visit to treat his right shoulder injury (with an x-ray on December 14, 2021). While a delay in treatment *alone* does not preclude a finding of Table onset,[9] Petitioner's significantly lengthy delay is problematic here. Indeed, Petitioner failed to identify his subject vaccine as causal until

---

[9] Indeed, there is no requirement that a Program claimant prove onset with evidence that was generated *within* the six-month severity timeframe, let alone contemporaneous to the two-day onset period. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury).

December 23, 2021 – just one week shy of a full year post vaccination. Ex. 4 at 88. Although Petitioner asserts that he mentioned right shoulder pain to his PCP one week post-vaccination (Ex. 3 ¶ 6), Petitioner's assertions are not fully supported by the medical records, as they wholly fail to contain such reports of pain one week post vaccination or at any time between then and the December 2021 visits.

Petitioner attempted to explain this critical deficiency in the medical records, in part, by providing a text message sent from his PCP dated August 12, 2021, and arguing that it supports the proposition that Petitioner had informal conversations about his shoulder symptoms with his PCP prior to this date and thus before his first encounter in December 2021. *See* Ex. 5; *see also* Motion at 5. But Petitioner has provided *no* medical record (or other corroborating) evidence documenting his complaints of right shoulder pain to his PCP (or any other treater) before this date[10] – other than that PCP's word in his own letter (to be discussed in more detail below).

More importantly, while the content of this text message ("And the website is the [VICP]" – Ex. 5) offers some support for Petitioner's assertions that he had informal conversations with his PCP about his injury prior to August 2021, this text message does not provide any additional context, such as who raised the issue of a potential vaccine-related injury or when. Indeed, this text message otherwise fails to shed *any* light on the onset of Petitioner's alleged injury. And, given that this text was created approximately eight months post vaccination, without corroborating evidence in the medical records, thus does not provide any support for his arguments regarding the onset of his injury occurring within 48 hours of vaccination.[11]

Relatedly, although Petitioner's treating PCP has authored a letter in support of Petitioner's onset assertions, the letter was drafted in June 2023 – approximately two and a half years post vaccination. The statements made in this letter thus cannot be given the same weight as a contemporaneous medical record made closer in time to vaccination and is instead more akin to an affidavit drafted in support of litigation. *See Milik v. Sec'y of Health & Hum. Servs.*, 822 F.3d 1367, 1381-82 (Fed. Cir. 2016) (noting that when a

---

[10] Indeed, Petitioner asserts that no additional text messages exist related to his private communications with his PCP specifically surrounding the August 2021 text. ECF No. 18 at 1.

[11] I also note that the text message itself has not been formally authenticated – and thus while I have reviewed it for purposes of resolving this fact dispute, I cannot on its face conclude that it is reliable. *See* Ex. 5; *see also* ECF No. 18 at 1. For example, the text message exhibit was filed as a screenshot of a cellphone conversation between a "Dr. Aaron" or "DH" and an unknown recipient (alleged to be Petitioner). The PCP who was alleged to have authored this text message did not offer an affidavit attesting that he was the doctor who sent the text message, to whom the text message was sent, or otherwise providing any details surrounding the circumstances which led to the creation of the text message. And no additional evidence has been submitted that otherwise authenticates the cellphone numbers associated with the text message conversation.

treating physician offers a statement that is not contemporaneous to events and is not within the context of diagnosis and treatment, a special master may conclude that it is not entitled to the same weight as contemporaneous medical records).

More so, the letter does not fully corroborate Petitioner's assertions in his affidavit – that he remained in close personal contact with his PCP since the time of his first complaint (one week post vaccination) and up until the August 12th text exchange. While the PCP generally attests to Petitioner's post-vaccination actions (namely that he attempted to deal with the pain on his own using medications prescribed for hip pain since it was off-season for farming), there is no evidence that these attestations were based on the PCP's personal knowledge or Petitioner's reports to him, and if so, *when* Petitioner expressed these circumstances to him. *See* Ex. 9 at 2. And more troublesome, it is not clear whether the PCP simply reiterated the statements made in the pleadings of the instant claim (i.e., the petition and Petitioner's affidavits) – for the statements in all filings are essentially identical. *Compare* Ex. 9 at 2, *with* Pet. ¶¶ 7-8; Ex. 3 ¶¶ 6-7. For these reasons, I afford the letter minimal weight in resolving the onset dispute.

In addition, the fact that Petitioner sought care on five occasions between the date of his vaccination and the December 2021 visits (from March to November 2021) without mentioning shoulder symptoms is not dispositive of the onset claim, but still fails to advance Petitioner's arguments regarding a favorable onset finding. In fact, four out of five of those visits were with an *orthopedist* – to whom it would have been somewhat reasonable to mention musculoskeletal complaints. Ex. 6 at 26-36. This is especially true if the symptoms were impacting Petitioner's farming abilities around those times, and if he was taking medication prescribed *by that treating orthopedist* for his shoulder (and hip) pain, as alleged in his affidavit. *See* Ex. 3 ¶¶ 6-7.

Also, Petitioner's explanation for *why* he did not mention right shoulder complaints at these orthopedic visits is not entirely persuasive. Petitioner makes two points: that these orthopedic visits were "quick in-and-out visits" to treat hip pain, and that he *did* mention his issues to his orthopedist, who then referred him to a colleague. Ex. 3 ¶ 8 (emphasis added). I somewhat credit Petitioner's assertion that since these visits were for unrelated hip pain he may not have thought to mention shoulder issues. But the assertion that he complained of right shoulder issues to this orthopedist appears to insinuate that he did so around the time of his visits between March and November 2021. However, the medical records appear to show a different timeline, in that Petitioner did not mention right shoulder complaints to this treater, receive a referral to the second orthopedist, nor seek care with the colleague until spring/summer *2022*. *See* Ex. 6 at 26-36, 52, 94. The current record thus does not adequately account for Petitioner's failure to mention right shoulder complaints to this orthopedist at all during 2021.

Likewise, Petitioner's explanation that he did not seek in-person care (including after discussing his injury with his PCP via text in August 2021) until December 2021 because of his fear of getting COVID-19 and suffering further respiratory issues (Ex. 3 ¶ 8) is not fully supported by the filed record. In fact, Petitioner attended all four intervening orthopedic visits (plus treatment for COVID) throughout 2021 *in person*. The current record thus does not sufficiently explain Petitioner's failure to seek right shoulder care in person or otherwise during 2021, since he was already being seen for musculoskeletal complaints.

Despite the deficiencies related to Petitioner's ability to establish Table-consistent onset described above, the medical record entries from Petitioner's visits beginning one year post vaccination and thereafter do contain consistent reports of post-vaccination pain. *See,* e.g., Ex. 4 at 88 (a December 23, 2021 PCP visit reporting right shoulder pain "since his flu shot on 12/31/2020"); Ex. 6 at 15 (a July 21, 2022 orthopedic visit reporting "that he got the flu shot on 12/2020 and the right shoulder has been progressively painful since then."); Ex. 7 at 19-20 (an August 9, 2022 PT visit reporting that "he had a flu shot on 12/31/2020 and had pain in his right shoulder afterward."). But such entries must ultimately be weighed against the fact that *all* of Petitioner's reports to treaters contained in the medical records were made *after* he learned of the existence of the VICP. *See* Ex. 5 (the text from August 12, 2021, stating that the "website is the national vaccine injury compensation program.").

Special masters have often afforded less weight to statements made to treating physicians when made in the context of litigation, or those made after a petitioner began to suspect she might have a Program claim. *See,* e.g., *Rastetter v. Sec'y of Health & Hum. Servs.,* No. 19-1840V, 2023 WL 5552317, at *10 (Fed. Cl. Spec. Mstr. Aug. 3, 2023) (affording little weight to a statement made after a 17-month gap in treatment, where the petitioner told the treater the return to care was at the direction of the lawyer); *Duda v. Sec'y of Health & Hum. Servs.,* No. 19-31V, 2021 WL 4735857, at *8 (Fed. Cl. Spec. Mstr. Aug. 10, 2021) (affording less weight to later statements made for the purposes of litigation that directly conflicted with earlier reports to treaters). While this does not mean *every* petitioner who knows of the Program's existence or has a potential vaccine claim is inherently not credible, the specific factual circumstances must be considered. *See Buck v. Sec'y of Health & Hum. Servs.,* No. 19-1301V, 2023 WL 6213423, at *8 (Fed. Cl. Spec. Mstr. Aug. 23, 2023) (failing to "dismiss the possibility that a petitioner *could* be incentivized to exaggerate their injuries by the prospect of monetary gain, [but noting] that does not mean that every petitioner who knows the Program exists is not credible").

Here, the factual circumstances show that Petitioner's December 2021 reports to his PCP came more than *a year* after vaccination and were the *first* mentions of right

shoulder pain included in any of the contemporaneous medical records. This is therefore not a case where a claimant had sought care close-in-time to the subject vaccination but stopped, then spoke with counsel regarding a potential claim, and subsequently returned for further care – thus creating a clear reason to doubt the petitioner's later reports. *See, e.g., Rastetter*, 2023 WL 5552317, at *10. But just as problematic, Petitioner in the instant case did not even attempt to corroborate his right shoulder complaints by complaining about them at all to a medical provider (and thus encapsulating such complaints in a visit note) until after learning of the existence of the VICP, even though he had several opportunities to address this pain with his orthopedist. Ex. 6 at 26-36. Such reports in the medical records thus cannot overcome the lack of record evidence supporting Table onset in the records closet in time to the subject vaccination.

At bottom, it is the overall mix of evidence herein that causes me to find Table onset cannot be preponderantly established. In other cases, delay in treatment and/or onset references made after learning of the existence of the VICP might tip the scales the other way – not so here.

## VI.   Finding as to Onset

While I have found that the submitted evidence does not preponderantly support a showing of two-day onset as required for a Table SIRVA, the filed record leaves several additional obstacles in determining when the onset of Petitioner's condition likely occurred. For example, the August 2021 text message from his PCP – created eight months post vaccination – supports the fact that Petitioner and his PCP likely discussed his right shoulder pain prior to this date (even if not within 48 hours of the subject vaccination). Ex. 5. But the message fails to shed any light on how long before this text message that the two discussed Petitioner's alleged injury.

Petitioner's and his wife's affidavits (Exs. 3, 10), attest to ongoing contact between Petitioner and his PCP since the first report one week post vaccination, and thereafter "over the next several months." However, there is nothing in the submitted record that corroborates this ongoing contact between Petitioner and his PCP, nor evidence that adds context to when this contact occurred. In fact, the PCP letter is inconsistent with Petitioner's and his wife's claims and fails to describe continuous contact with Petitioner. Ex. 9 at 2. I thus cannot glean from these witness statements alone that Petitioner was in contact with his PCP and thus reported right shoulder pain within several months of vaccination.

On the other hand, Petitioner's affidavit and the PCP letter corroborate *some* circumstantial evidence: specifically, that after May 2021 – when Petitioner resumed his

13

work as a farmer – his shoulder pain became a notable issue involving ROM limitations and an inability to perform his duties. *Compare* Ex. 3 ¶ 7 (Petitioner noting that he began work outdoors "in May 2021, and the pain and restricted mobility prevented [him] from effectively doing [his] work."), *with* Ex. 9 at 2 (PCP noting that "[i]n May 2021" Petitioner began outside farming work and experienced a loss of ROM that impacted his full duties). Both Petitioner's and his PCP's ability to point to May 2021 specifically as a time when Petitioner's symptoms were apparent, provides some support for a showing that the manifestation of Petitioner's shoulder injury was likely around May 2021. When taken together, the evidence supports the conclusion that the onset of Petitioner's right shoulder injury occurred sometime between May and August 2021 – thus approximately five-to-eight months post vaccination.

### VII.   Causation-in-Fact Claim

Although the parties have not fully briefed a possible causation-in-fact claim, I find the record sufficiently complete to make a determination as to any potential off-Table claim for a shoulder injury that occurred months after vaccination.

Indeed, balancing all of the above, I conclude on this record that Petitioner will not be able to satisfy *Althen* prong three. The third *Althen* prong requires establishing a "proximate temporal relationship" between the vaccination and the injury alleged. *Althen,* 418 F.3d at 1281. That term has been equated to the phrase "medically-acceptable temporal relationship." *Id.* A petitioner must offer "preponderant proof that the onset of symptoms occurred within a timeframe which, given the medical understanding of the disorder's etiology, it is medically acceptable to infer causation." *de Bazan v. Sec'y of Health & Hum. Servs.,* 539 F.3d 1347, 1352 (Fed. Cir. 2008).

Here, the record best supports a five-to-eight months post-vaccination onset. But several prior cases have denied entitlement to compensation where onset of shoulder pain occurred weeks or months post-vaccination, since only a short/immediate onset is consistent with a SIRVA-like injury. *See,* e.g., *Pitts v. Sec'y of Health & Hum. Servs.,* No. 18-1512V, 2023 WL 2770943, at *14 (Fed. Cl. Spec. Mstr. Mar. 10, 2023) (denying entitlement where onset of shoulder pain occurred one week post vaccination); *Nicholson v. Sec'y of Health & Hum. Servs.,* No. 17-1416V, 2022 WL 14437541, at *25-26 (Fed. Cl. Spec. Mstr. Sept. 22, 2022) (denying entitlement where onset of shoulder pain occurred between 32-49 days post-vaccination); *Clavio v. Sec'y of Health & Hum. Servs.*, No. 17-1179V, 2022 WL 1078175, at *8 (Fed. Cl. Spec. Mstr. Feb. 16, 2022) (denying entitlement where onset of shoulder pain was 59 days post-vaccination); *Mack v. Sec'y of Health & Hum. Servs.*, No. 15-0149V, 2016 WL 5746367, at *10-11 (Fed. Cl. Spec. Mstr. July 14, 2016) (explaining that the 48-hour onset required by the Vaccine Injury Table does not

preclude "a claim involving a later onset (even one that is substantially later)" but finding petitioner failed to demonstrate a six-month post-vaccination onset is medically reasonable to infer causation). For all the reasons discussed herein, the months long post-vaccination onset in this case is singularly fatal to Petitioner's claim on this record.

## Conclusion

Considering the record as a whole under the standards applicable in this Program, Petitioner has not preponderantly established either that his December 31, 2020 flu vaccination resulted in a Table SIRVA or alternatively caused-in-fact a shoulder injury. Accordingly, Petitioner is not entitled to compensation. Therefore, this case is dismissed.[12]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[12] In the absence of a timely-filed motion for review of this Decision, the Clerk of the Court shall enter judgment accordingly.